**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CONTRARIAN CAPITAL MANAGEMENT, L.L.C., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN DOME DU GOUTER MASTER FUND, LP, CONTRARIAN CAPITAL SENIOR SECURED, L.P., CONTRARIAN EM II, LP, CONTRARIAN EMERGING MARKETS, L.P., BOSTON PATRIOT SUMMER ST LLC, POLONIUS HOLDINGS, LLC, EMMA 1 MASTER FUND, L.P., CONTRARIAN FUNDS, L.L.C., and E1 SP, A SEGREGATED ACCOUNT OF EMAP SPC, <br><br> Plaintiffs, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Nos. 21 Misc. 18, 22 Misc. 131 & 22 Misc. 263 (LPS) |
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE, <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | No. 23 Misc. 397 (LPS) |
| TIDEWATER INVESTMENT SRL and TIDEWATER CARIBE, S.A., <br><br> Plaintiffs, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | No. 19 Misc. 79 (LPS) |
| VALORES MUNDIALES, S.L. and CONSORCIO ANDINO, S.L., <br><br> Plaintiffs, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | No. 23 Misc. 298 (LPS) |

| | |
|---|---|
| RUDI LOVATI and ALESSANDRO LUCIBELLO PIANI,<br><br>          Plaintiffs,<br><br>    v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>          Defendant. | No. 23 Misc. 340 (LPS) |
| PHARO GAIA FUND LTD., and PHARO MACRO FUND LTD.,<br><br>          Plaintiffs,<br><br>    v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>          Defendant. | No. 23 Misc. 360 (LPS) |
| PHARO GAIA FUND LTD., PHARO MACRO FUND LTD. and PHARO TRADING FUND, LTD.,<br><br>          Plaintiffs,<br><br>    v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>          Defendant. | No. 23 Misc. 361 (LPS) |
| GRAMERCY DISTRESSED OPPORTUNITY FUND LLC,<br><br>          Plaintiff,<br><br>    v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>          Defendant. | Nos. 23 Misc. 378 & 23 Misc. 379 (LPS) |

## SEVEN CREDITORS' BRIEF IN OPPOSITION TO THE VENEZUELA PARTIES' MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL

Steven F. Molo (admitted *pro hac vice*)
Justin M. Ellis (admitted *pro hac vice*)
Lauren F. Dayton (admitted *pro hac vice*)
Mark W. Kelley (admitted *pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY  10022
Tel.: (212) 607-8170
Fax: (212) 607-8161
smolo@mololamken.com

Rebecca L. Butcher (#3816)
Jennifer L. Cree (#5919)
LANDIS RATH & COBB LLP
919 Market Street, Suite 1800
Wilmington, DE  19801
Tel.: (302) 467-4400
butcher@lrclaw.com
cree@lrclaw.com

Lois S. Ahn (admitted *pro hac vice*)*
MOLOLAMKEN LLP
600 New Hampshire Avenue, NW, Suite 500
Washington, DC  20037
Tel.: (202) 556-2000
Fax: (202) 556-2001
*admitted only in New York; practice limited to matters
before federal courts and federal agencies

*Counsel for the Contrarian Parties*

Alexander A. Yanos (admitted *pro hac vice*)
ALSTON & BIRD, LLP
90 Park Avenue, 15th Floor
New York, NY 10016
Tel.: (212) 210-9400
alex.yanos@alston.com

Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, Suite 1700
P.O. Box 8705
Wilmington, DE 19899
Tel.: (302) 652-4100
ljones@pszjlaw.com
pkeane@pszjlaw.com

Robert Poole (admitted *pro hac vice*)
ALSTON & BIRD, LLP
1201 W. Peachtree St. NE, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-4547
robert.poole@alston.com

*Counsel for Saint-Gobain Performance Plastics Europe*

Miguel López Forastier (admitted *pro hac vice*)
Mark Herman (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, D.C. 20001
Tel.: (202) 662-5185
mlopezforastier@cov.com
mherman@cov.com

Andrew S. Dupre (#4621)
Sarah E. Delia (#5833)
MCCARTER & ENGLISH LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Tel.: (302) 984-6300
adupre@mccarter.com
sdelia@mccarter.com

*Counsel for Tidewater Investment SRL & Tidewater Caribe S.A.*

Miguel López Forastier (admitted *pro hac vice*)
José E. Arvelo (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, D.C. 20001
Tel.: (202) 662-5185
mlopezforastier@cov.com
jarvelo@cov.com

Andrew S. Dupre (#4621)
Sarah E. Delia (#5833)
MCCARTER & ENGLISH LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Tel.: (302) 984-6300
adupre@mccarter.com
sdelia@mccarter.com

*Counsel for Valores Mundiales, S.L. and Consorcio Andino, S.L.*

Stephen B. Brauerman (#4952)
Sarah T. Andrade (#6157)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware 19801
Tel.: (302) 655-5000
sbrauerman@bayardlaw.com
sandrade@bayardlaw.com

*Counsel for Pharo Gaia Fund, Ltd., Pharo Macro Fund, Ltd., and Pharo Trading Fund, Ltd.*

Mark W. Friedman (*pro hac vice* pending)
William H. Taft V (*pro hac vice* pending)
Sarah Lee (*pro hac vice* pending)
Juan Fandiño (*pro hac vice* pending)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York, 11001
Tel.: (212) 909 6000
mwfriedman@debevoise.com
whtaft@debevoise.com
slee1@debevoise.com
jfandino@debevoise.com

Theodore A. Kittila (Bar No. 3963)
HALLORAN FARKAS + KITTILA LLP
5801 Kennett Pike, Suite C/D
Wilmington, Delaware 19807
Tel.: (302) 257 2025
tk@hfk.law

*Counsel for Gramercy Distressed Opportunity Fund LLC*

David T. McTaggart, Esq.
Anthony J. Costantini, Esq.
Stephanie Lamerce, Esq.
DUANE MORRIS LLP
1540 Broadway
New York, NY  10036-4086
Telephone: (212) 692-1006
Facsimile: (212) 202-4486
DTMcTaggart@duanemorris.com
AJCostantini@duanemorris.com
SLamerce@duanemorris.com
(to be admitted *pro hac vice*)

Rudolph J. DiMassa, Jr., Esq.
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA  19103
Tel.: (215) 979-1506
Fax: (215) 689-2138
DiMassa@duanemorris.com
(to be admitted *pro hac vice*)

Christopher M. Winter (DE 4163)
James C. Carignan (DE 4230)
Mackenzie M. Wrobel (No. 6088)
Tracey E. Timlin (No. 6469)
1201 N. Market Street, No. 501
Wilmington, DE 19801
Tel.: (302) 657-4900
cmwinter@duanemorris.com
jccarignan@duanemorris.com
mmwrobel@duanemorris.com
ttimlin@duanemorris.com

*Counsel to Rudi Lovati and Alessandro Lucibello Piani*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 1

SUMMARY OF ARGUMENT .......................................................................................... 3

ARGUMENT ..................................................................................................................... 4

I.      The Question of Law the Venezuela Parties Identify Is Not Controlling........................... 4

II.     There Are No Substantial Grounds For Difference of Opinion.......................................... 7

        A.      *Bancec* Governs the Alter-Ego Inquiry Here........................................................8

        B.      The Alter-Ego Inquiry Is Not a "Procedure on Execution".....................................9

III.    Immediate Appeal Would Not Advance the Ultimate Termination of the Litigation................................................................................................................ 10

        A.      An Interlocutory Appeal Would Not "Overturn" the Sale Process .....................10

        B.      The Delay and Disruption of an Interlocutory Appeal Would Outweigh Any Efficiencies........................................................................................12

IV.     The Venezuela Parties Have Not Shown Exceptional Circumstances ............................ 14

CONCLUSION................................................................................................................ 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Acosta v. Pace Loc. I-300 Health Fund*,
  2007 WL 1074093 (D.N.J. Apr. 9, 2007) ................................................................5

*In re AE Liquidation, Inc.*,
  451 B.R. 343 (D. Del. 2011) ....................................................................................7

*Alejandre v. Republic of Cuba*,
  42 F. Supp. 2d 1317 (S.D. Fla. 1999) .....................................................................8

*Alejandre v. Telefonica Larga Distancia, de Puerto Rico, Inc.*,
  183 F.3d 1277 (11th Cir. 1999) ...............................................................................8

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*,
  39 F. Supp. 3d 516 (S.D.N.Y. 2014) .....................................................................10

*Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*,
  48 F.3d 576 (1st Cir. 1995) ......................................................................................9

*Arbor Glob. Strategies LLC v. Xilinx, Inc.*,
  2020 WL 6384205 (D. Del. Oct. 30, 2020) .............................................................4

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
  575 U.S. 138 (2015) .................................................................................................5

*Bramble Transp., Inc. v. Sam Senter Sales, Inc.*,
  294 A.2d 97 (Del. Super. Ct. 1971) .......................................................................10

*Christiansen v. Mech. Contractors Bid Depository*,
  404 F.2d 324 (10th Cir. 1968) ...............................................................................10

*Consumer Fin. Prot. Bureau v. Navient Corp.*,
  522 F. Supp. 3d 107 (M.D. Pa. 2021) ......................................................................6

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  932 F.3d 126 (3d Cir. 2019) .....................................................................................5

*De Letelier v. Republic of Chile*,
  748 F.2d 790 (2d Cir. 1984) .....................................................................................8

*Dexia Credit Loc. v. Rogan*,
  629 F.3d 612 (7th Cir. 2010) .................................................................................10

ii

*EM Ltd. v. Republic of Argentina*,
473 F.3d 463 (2d Cir. 2007)..........................................................8, 10

*EMSI Acquisition, Inc. v. RSUI Indem. Co.*,
2018 WL 2316633 (D. Del. May 22, 2018).....................................7

*In re Essar Steel Minn. LLC*,
607 B.R. 409 (D. Del. 2019) .................................................4, 11, 14

*In re Essar Steel Minn. LLC*,
2022 WL 2828849 (D. Del. July 20, 2022) ....................................11

*FG Hemisphere Assocs., LLC v. Republique du Congo*,
455 F.3d 575 (5th Cir. 2006) .........................................................10

*First Horizon Bank v. Moriarty-Gentile*,
2015 WL 8490982 (E.D.N.Y. Dec. 10, 2015) ..................................6

*First Nat'l City Bank v. Banco para el Comercio Exterior de Cuba*,
462 U.S. 611 (1983).......................................................................8

*Improved Search LLC v. AOL Inc.*,
2016 WL 2642215 (D. Del. May 6, 2016).......................................7

*Int'l Petroleum Prods. & Additives Co. v. Black Gold S.A.R.L.*,
2021 WL 7448611 (N.D. Cal. Oct. 7, 2021)....................................6

*Jackson Hewitt, Inc. v. DJSG Utah Tax Serv., LLC*,
2011 WL 601585 (D.N.J. Feb. 17, 2011) ........................................7

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974).............................................................4

*Kokinda v. Pennsylvania Dep't of Corr.*,
803 F. App'x 574 (3d Cir. 2020) .....................................................5

*LNC Invs., Inc. v. Republic of Nicaragua*,
115 F. Supp. 2d 358 (S.D.N.Y. 2000)..............................................8

*Mackey v. Lanier Collection Agency & Serv., Inc.*,
486 U.S. 825 (1988).........................................................................9

*Matter of Magic Rests., Inc.*,
202 B.R. 24 (D. Del. 1996)..............................................................14

*Miron v. Seidman*,
2006 WL 3742772 (E.D. Pa. Dec. 13, 2006)..................................10

*Nat'l Liab. & Fire Ins. Co. v. Brimar Transit, Inc.*,
   2021 WL 6098288 (W.D. Pa. Dec. 23, 2021)....................................................5

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
   2023 WL 2609248 (D. Del. Mar. 23, 2023) ......................................................5

*OI European Grp. B.V. v. Bolivarian Republic of Venezuela*,
   73 F.4th 157 (3d Cir. 2023) ...............................................................1, 2, 12

*In re Physiotherapy Holdings, Inc.*,
   2017 WL 6524524 (D. Del. Dec. 21, 2017).......................................................7

*Princeton Digital Image Corp. v. Konami Digital Ent. Inc.*,
   2017 WL 6290637 (D. Del. Dec. 11, 2017)........................................................6

*Resol. Tr. Corp. v. Ruggiero*,
   994 F.2d 1221 (7th Cir. 1993) ........................................................................9

*Schreiber v. Kellogg*,
   50 F.3d 264 (3d Cir. 1995)..............................................................................9

*Supporters to Oppose Pollution, Inc. v. Heritage Grp.*,
   973 F.2d 1320 (7th Cir. 1992) ......................................................................10

## STATUTES AND RULES

28 U.S.C. § 1292(b).............................................................................. *passim*

Fed. R. Civ 69 ..................................................................................... *passim*

Fed. R. Civ. P. 69(a) ................................................................................2, 9

## INTRODUCTION

The Bolivarian Republic of Venezuela and Petróleos de Venezuela, S.A. (the "Venezuela Parties") have three times now raised and lost their argument that Rule 69 requires Venezuela's judgment creditors to satisfy Delaware alter-ego law.  They now ask this Court to discard the rules of finality and certify the issue for interlocutory appeal under 28 U.S.C. § 1292(b).

The Court should deny the request.  The Venezuela Parties cannot satisfy Section 1292(b)'s requirements.  *First*, the issue is not "controlling" because the Court's primary ground for its decision – collateral estoppel – would support the Court's holding even if the Third Circuit reversed on the Rule 69 issue.  *Second*, there is no "substantial ground for difference of opinion" on the issue because the Supreme Court's *Bancec* decision controls the alter-ego inquiry and the plain text of Rule 69 precludes the Venezuela Parties' argument.  *Third*, immediate appeal of the November 1 order would not "advance the ultimate termination" of the litigation because the sale process will continue regardless.  And *fourth*, there are no exceptional circumstances that warrant a departure from the normal presumption against piecemeal appellate litigation.

## BACKGROUND

Seven creditor groups holding judgments against the Bolivarian Republic of Venezuela (the "Seven Creditors") moved for writs of attachment *fieri facias* against shares of PDV Holding, Inc. ("PDVH") owned by Petróleos de Venezuela, S.A. ("PDVSA"), Venezuela's state-owned oil company.  D.I. 74 (the "Order") at 1.  While those motions were pending, the Third Circuit issued a decision in a related creditor action affirming the Court's ruling that PDVSA is the alter ego of Venezuela and that PDVSA is not entitled to sovereign immunity.  Order at 5; *see OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157, 163 (3d Cir. 2023) ("*OIEG II*").  In *OIEG II*, the Third Circuit declined to address the Rule 69 issue prior to a final order, instead upholding the rule of finality, which "[o]ften . . . means dissatisfied parties

must wait rather than appeal, even, as is common, when time is money." *Id.* at 174.  The Seven Creditors and the Venezuela Parties then stipulated that "PDVSA is not immune under the FSIA from the attachment" and agreed that the Court should deny PDVSA's cross-motions to dismiss "'to the extent [the motions] assert[ ] FSIA immunity or lack of jurisdiction.'"  Order at 5.

The Venezuela Parties, however, contended that state law nonetheless prohibited attachment.  They argued that, under Federal Rule of Civil Procedure 69(a), "'Delaware alter ego principles'" must be satisfied to secure an attachment, and that those "principles" permit attachment only on a showing of fraud or injustice.  Order at 5.  Because the Venezuela Parties had raised and lost that argument twice before, *id.* at 7-11, the Seven Creditors argued that the Venezuela Parties were collaterally estopped from relitigating the issue, *see* Misc. Nos. 19-79 D.I. 56 at 6-7; 21-18 D.I. 58 at 2-7; 23-298 D.I. 18 at 6-7.  The Seven Creditors also argued the Venezuela Parties were wrong on the merits.  *See* 21-18 D.I. 58; 23-298 D.I. 18; 19-79 D.I. 56.

This Court agreed.  On November 1, 2023, in a thorough opinion, it concluded that the Venezuela Parties were collaterally estopped from relitigating their claim that Delaware law governs the alter-ego analysis.  Order at 6-13.  The Court also held that even if collateral estoppel did not apply, the Venezuela Parties' argument failed on the merits, holding (consistent with *OIEG* and *Crystallex*) that "federal common law, rather than Delaware law, governs the alter ego inquiry." *Id.* at 13-20.  In light of those determinations, the Court granted the Seven Creditors' motions for writs of attachment *fieri facias*.

The Venezuela Parties then filed a motion to certify that order for interlocutory appeal under 28 U.S.C. § 1292(b).  D.I. 77 ("Mot.").  That motion identified the purported "controlling question of law" for Section 1292(b) purposes as "whether this Court should apply Delaware law or federal common law in analyzing whether PDVSA is the alter ego of the Republic for

purposes of attachment of PDVSA's property."  Mot. 8.  The motion did not challenge the Court's primary holding that collateral estoppel barred re-litigation of the Rule 69 issue.

## SUMMARY OF ARGUMENT

The certification motion should be denied.  The Venezuela Parties cannot satisfy the requirements of 28 U.S.C § 1292(b) and have not shown exceptional circumstances.

I.      The question of law the Venezuela Parties identify – whether Rule 69 requires applying state law – is not "controlling."  28 U.S.C § 1292(b).  The Court's holding is supported by independent grounds, including collateral estoppel, which the Venezuela Parties do not challenge.  And even if reversal on appeal were possible, it would result only in remand to determine whether Delaware's alter-ego test is satisfied.

II.     There is no "substantial ground for difference of opinion."  28 U.S.C § 1292(b). The Court correctly applied *Bancec*, which provides the rule governing whether a foreign instrumentality is the alter ego of a sovereign state.  And Rule 69 only incorporates state "procedure on execution."  Because Delaware's alter-ego law is neither a procedure nor a doctrine specific to execution proceedings, it is not incorporated through Rule 69.

III.    Immediate appeal would not "materially advance the ultimate termination of the litigation."  28 U.S.C § 1292(b).  Even if the Venezuela Parties prevailed on appeal, the Seven Creditors' attachments would still be valid under the Court's collateral estoppel decision.  And the sale process will go forward to satisfy the claims of other creditors regardless of any appeal in these cases.

IV.     The Venezuela Parties have failed to show exceptional circumstances warranting departure from the normal rules of finality.  The size and international dimension of the sale process are irrelevant because the sale will proceed regardless of the outcome of any interlocutory appeal.

## ARGUMENT

The Court may certify an order for interlocutory appeal only if it finds that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The party seeking certification must demonstrate "'exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment.'" *In re Essar Steel Minn. LLC*, 607 B.R. 409, 414-15 (D. Del. 2019). Interlocutory appeal may be denied "for entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). Certification for interlocutory appeal thus must "be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation." *Arbor Glob. Strategies LLC v. Xilinx, Inc.*, 2020 WL 6384205, at *1 (D. Del. Oct. 30, 2020).

## I.    THE QUESTION OF LAW THE VENEZUELA PARTIES IDENTIFY IS NOT CONTROLLING

A "controlling" question of law is one that "would be reversible error on final appeal" or is "serious to the conduct of the litigation, either practically or legally." *Katz*, 496 F.2d at 755. The question of law the Venezuela Parties advance is not controlling. It would not require reversal on appeal or seriously impact the conduct of litigation because the Court's holding is primarily supported by the independent ground of collateral estoppel.

The Venezuela Parties all but ignore the Court's primary holding that they are collaterally estopped from litigating the issue they seek to certify for interlocutory appeal. Order at 6-13. That is fatal. When "alternative grounds" would support affirmance if the Court of Appeals reverses on the identified question of law, the question is not "controlling." *Acosta v. Pace Loc.*

4

*I-300 Health Fund*, 2007 WL 1074093, at *1 (D.N.J. Apr. 9, 2007); *see also Nat'l Liab. & Fire Ins. Co. v. Brimar Transit, Inc.*, 2021 WL 6098288, at *3 (W.D. Pa. Dec. 23, 2021) (rejecting certification of issue which "was an alternative rationale provided by the Court" and thus not a "controlling question of law").

The Venezuela Parties assert that if the Third Circuit were to reverse on the merits of the Rule 69 question, that would "fundamentally undermine" the holdings in *Crystallex I* and *OIEG I*, which are the "basis for the collateral-estoppel holding in the present cases."  Mot. at 17.  That argument fails for three reasons.  *First*, given the alternative grounds for affirmance, including collateral estoppel, it is unlikely the Third Circuit would even reach the Rule 69 issue.  *Second*, collateral estoppel is not "undermined" if the underlying decision conflicts with precedent – it binds regardless.  *See, e.g.*, *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 158 (2015) ("[I]ssue preclusion prevents relitigation of wrong decisions just as much as right ones.") (quotation marks and alteration omitted); *Kokinda v. Pa. Dep't of Corr.*, 803 F. App'x 574, 577 (3d Cir. 2020) (rejecting argument that application of issue preclusion was improper because ruling was legally erroneous) (citing *B & B Hardware, Inc.*, 575 U.S. at 138).  *Third*, *Crystallex I* was affirmed, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019), and *OIEG I* cited that affirmance and collateral estoppel as bases for its ruling on the Rule 69 issue, *see OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 2023 WL 2609248, at *29 (D. Del. Mar. 23, 2023).  Accordingly, neither *Crystallex I* nor *OIEG I* is at risk of a reversal.

Further, the Rule 69 issue is not "controlling" because the Court provided a *second* alternative ground for its holding – that Delaware choice-of-law rules require applying *Bancec*.  Order 18.  The Venezuela Parties raise a new argument against this ground, claiming Rule 69 incorporates state law but not state choice-of-law principles.  Mot. at 13 & 16 n.8.  The

Venezuela Parties "forfeited" this argument by failing to raise it earlier.  Order at 18.  Moreover, the argument fails on the merits.  The Venezuela Parties cite no case for their absurd position on the scope of Rule 69 – that, despite referring only to "procedure," Rule 69 incorporates all state law, but not state choice-of-law principles.  And courts *do* apply state choice-of-law principles when determining what alter-ego law to apply in Rule 69 proceedings.  *See, e.g., Int'l Petroleum Prods. & Additives Co. v. Black Gold S.A.R.L.*, 2021 WL 7448611, at *10-13 (N.D. Cal. Oct. 7, 2021), *R. & R. adopted*, 2021 WL 8154891 (N.D. Cal. Dec. 7, 2021) (applying California choice-of-law rules to determine whether California or Monaco law governed alter-ego analysis); *First Horizon Bank v. Moriarty-Gentile*, 2015 WL 8490982, at *6 (E.D.N.Y. Dec. 10, 2015) (applying New York choice-of-law rules to determine that California law governed alter-ego analysis).

But even aside from the alternative grounds for the Court's ruling, Delaware's alter-ego standard is satisfied here.  *See* p. 11, *infra*.  The Rule 69 issue is thus not controlling because the Seven Creditors could prevail on remand if the Venezuela Parties' appeal were to succeed. *Princeton Digital Image Corp. v. Konami Digital Ent. Inc.*, 2017 WL 6290637, at *2 (D. Del. Dec. 11, 2017) (outcome on one defense not "controlling" where other defenses were available).

The Venezuela Parties point to "'practical'" factors, contending interlocutory appeal would resolve "uncertainty" and save time and expense.  Mot. at 16-17.  Those arguments are meritless.  As a case relied on by the Venezuela Parties states, "the purpose of Section 1292(b) is to avoid a wasted protracted trial if it could early be determined that there might be no liability." *Consumer Fin. Prot. Bureau v. Navient Corp.*, 522 F. Supp. 3d 107, 112 (M.D. Pa. 2021) (citation and quotation marks omitted).  Here, there is no looming trial or event which could be avoided by interlocutory appeal.  This is a post-judgment enforcement proceeding where the

primary issue – whether the Seven Creditors are entitled to attachment of PDVSA's property – has been resolved by this Court in decisions with preclusive effect.  *See* Order at 6-13.  An appeal now would only compound expense for the parties and uncertainty for bidders while achieving little or no savings of time or costs.  *See* pp. 10-14, *infra*.

## II.   THERE ARE NO SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION

The Venezuela Parties do not contend there is ground for a difference of opinion on the primary ground for the Court's decision – collateral estoppel.  And the Rule 69 issue is squarely resolved by the Supreme Court's *Bancec* decision and the text of Rule 69.  Multiple courts have applied *Bancec* to determine an instrumentality's alter-ego status in a Rule 69 proceeding.  The Venezuela Parties fail to distinguish those cases or cite a single case applying state law.  There is no room for a difference of opinion, much less "substantial ground."

The Venezuela Parties' primary argument is that there is a lack of precedent on the Rule 69 issue.  Mot. at 8-9.  That is wrong, but it would not justify interlocutory review regardless.  A lack of "case law on the precise issue" is not substantial ground for a difference of opinion. *EMSI Acquisition, Inc. v. RSUI Indem. Co.*, 2018 WL 2316633, at *3 (D. Del. May 22, 2018) (citing cases).  Nor is interlocutory appeal a vehicle "to provide early review of difficult rulings in hard cases."  *Improved Search LLC v. AOL Inc.*, 2016 WL 2642215, at *2 (D. Del. May 6, 2016) (quoting *Jackson Hewitt, Inc. v. DJSG Utah Tax Serv., LLC*, 2011 WL 601585, at *2 (D.N.J. Feb. 17, 2011)).  Rather, interlocutory appeal is appropriate only when there is "genuine doubt as to the correct legal standard."  *In re Physiotherapy Holdings, Inc.*, 2017 WL 6524524, at *6 (D. Del. Dec. 21, 2017); *see also In re AE Liquidation, Inc.*, 451 B.R. 343, 348 (D. Del. 2011) ("[M]ere disagreement with the ruling is not a substantial ground for difference of opinion.").

### A.     *Bancec* Governs the Alter-Ego Inquiry Here

*First*, the Venezuela Parties fail to address the critical case governing this issue – the Supreme Court's decision in *Bancec*.  *See First Nat'l City Bank v. Banco para el Comercio Exterior de Cuba*, 462 U.S. 611, 623 (1983) ("*Bancec*").  As this Court noted, *Bancec* is the only case providing a test to determine a sovereign instrumentality's alter-ego status; it governs both questions of liability and questions of jurisdiction; and it rejected the very argument the Venezuela Parties assert here – that "the law of the forum State" should control.  Order at 14-15 & n.9; *Bancec*, 462 U.S. at 622 n. 11.

Venezuela incorrectly claims this Court is the first to hold that federal common law governs the alter-ego analysis in a Rule 69 proceeding.[1]  The district court in *Alejandre v. Republic of Cuba*, 42 F. Supp. 2d 1317 (S.D. Fla. 1999), held that a Cuban instrumentality's assets could be attached to satisfy a judgment against Cuba under *Bancec*.  The Eleventh Circuit disagreed that *Bancec* was satisfied, but held *Bancec* governs "whether an instrumentality can be held responsible for the debts of its related foreign government."  *Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.*, 183 F.3d 1277, 1287 n.23 (11th Cir. 1999).  Every case addressing a state instrumentality's alter-ego status in a Rule 69 proceeding has applied *Bancec*.  *See EM Ltd. v. Republic of Argentina*, 473 F.3d 463 (2d Cir. 2007); *LNC Invs., Inc. v. Republic of Nicaragua*, 115 F. Supp. 2d 358 (S.D.N.Y. 2000); *De Letelier v. Republic of Chile*, 748 F.2d 790 (2d Cir. 1984) (same).  The Venezuela Parties fail to cite ***any case*** holding that state law, not *Bancec*, governs an instrumentality's alter-ego status.  There can be no "difference of opinion."

---

[1] The Venezuela Parties claim the Court held that federal common law applies to any "'substantive' questions" in an execution proceeding.  Not true.  The Court held that federal common law applies to the "***alter ego analysis***" in a Rule 69 motion "***against a state instrumentality***."  Order 14 (emphasis added).

8

### B.     The Alter-Ego Inquiry Is Not a "Procedure on Execution"

*Second*, there is no room for a "difference of opinion" on the scope of Rule 69, which requires that the "***procedure on execution***" accord with "the ***procedure*** of the state where the court is located."  Fed. R. Civ. P. 69(a)(1) (emphasis added).  Rule 69 incorporates only procedures, and only those procedures which "specifically govern the enforcement of judgments."  *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 582 (1st Cir. 1995); *see* Misc. No. 21-18 D.I. 58 at 11, 23-298 D.I. 18 at 7-8, 19-79 D.I. 56 at 7-8.  Rule 69 thus contemplates procedures like "methods for collecting judgments," *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833-34 (1988), and "stages, deadlines, and other forms, powers, and limitations specially adapted" to execution proceedings, *Resol. Tr. Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993).  It does not incorporate alter-ego standards.

The Venezuela Parties do not even contend Delaware's alter-ego test is a "procedure." Instead, they ignore the text of Rule 69, claim state law governs "substantive question[s]," and pretend the Court's distinction between procedural and substantive questions is "novel."  Mot. 9-10.  That is not "substantial ground" for a difference of opinion, particularly when the Venezuela Parties provide no authority for their position.  Instead, the Venezuela Parties cherry pick quotes from a slew of cases applying the law of the forum state in execution proceedings, arguing they prove courts ***must*** apply state law to ***every*** issue in an execution proceeding.[2]  But none of the new cases the Venezuela Parties cite hold that Rule 69 incorporates substantive state law or apply state alter-ego law to a foreign instrumentality.  Rather, they either "apply state law to

---

[2] Venezuela emphasizes *Schreiber v. Kellogg*, 50 F.3d 264 (3d Cir. 1995), but *Schreiber* asked (1) whether a will created a spendthrift trust, *id.* at 268-71, and (2) whether Pennsylvania law allows execution on a spendthrift trust, *id.* at 271-78.  As the Court noted, that inquiry goes to "what types of assets and interests may be attached" in Pennsylvania.  Order at 15.

determine what **types** of assets and interests may be attached,"[3] Order at 15, "apply state procedures" in an execution proceeding, *id.* at 16,[4] or apply state alter-ego law without addressing whether doing so is required by Rule 69.[5]

### III. IMMEDIATE APPEAL WOULD NOT ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION

The Venezuela Parties have failed to show that interlocutory appeal is an "efficient use of judicial resources." *Miron v. Seidman*, 2006 WL 3742772, at *3 (E.D. Pa. Dec. 13, 2006). Rather than advance the ultimate termination of the litigation, an additional appeal now would cause delay, multiply expense, and potentially undermine the sale process.

#### A. An Interlocutory Appeal Would Not "Overturn" the Sale Process

The Venezuela Parties claim that an interlocutory appeal on the Rule 69 issue would "materially advance the ultimate termination of the litigation" because, "should the Third Circuit conclude that Delaware law applies, the sale process is likely to be overturned."  Mot. at 4-5. That is mistaken for at least three reasons.

---

[3] *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 480-81 (2d Cir. 2007) (applying state law to determine whether a right to assign an interest in property is subject to attachment, but applying *Bancec* to determine whether an Argentine instrumentality's assets were "attachable interests" to satisfy judgment against Argentina); *FG Hemisphere Assocs., LLC v. Republique du Congo*, 455 F.3d 575, 595 n.4 (5th Cir. 2006) (applying state law to determine whether a royalty interest in a mineral estate is subject to execution); *Bramble Transp., Inc. v. Sam Senter Sales, Inc.*, 294 A.2d 97, 100 (Del. Super. Ct. 1971) (applying Delaware law to determine whether transfer of assets before attachment order is entered is effective).

[4] *See Dexia Credit Loc. v. Rogan*, 629 F.3d 612, 622 (7th Cir. 2010) (applying state law to determine the "scope of a district court's authority in supplemental proceedings"); *Supporters to Oppose Pollution, Inc. v. Heritage Grp.*, 973 F.2d 1320, 1327 (7th Cir. 1992) (rejecting attempt to invoke state alter-ego law under Rule 69 in a bankruptcy proceeding to avoid claim preclusion and distinguishing between primary and secondary liability).

[5] *Christiansen v. Mech. Contractors Bid Depository*, 404 F.2d 324, 325 (10th Cir. 1968); *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 524 (S.D.N.Y. 2014).

*First*, appeal would not advance the termination of this litigation because the Rule 69 issue is not controlling.  *See* pp. 4-7, *supra*.  This Court's primary ground for granting the attachments was collateral estoppel.  Order at 6-13.  The Court also cited Delaware choice-of-law principles in granting the attachments.  *Id.* at 13-20.  Neither of those grounds would be affected by a reversal on the merits of the Rule 69 issue because collateral estoppel precludes relitigation even if the underlying decision is incorrect, and the Venezuela Parties forfeited any argument in response to the choice-of-law argument.  *See* pp. 5-6, *supra*.

*Second*, even if the Third Circuit somehow reversed on all of the grounds supporting the Court's Order, remand would be required to address the argument that PDVSA and Venezuela are alter egos under Delaware law.  *See* Order at 19-20.  This Court's prior finding in *Crystallex* that PDVSA did not perpetrate fraud does not bind the Seven Creditors – on the contrary, the Court expressly declined to reach the issue in these cases.  *See* Order at 20 n.14.  Because even total victory on appeal for the Venezuela Parties "would still not fully resolve" the validity of the Seven Creditors' attachments, appeal would not "materially advance" the ultimate termination of the litigation.  *In re Essar Steel Minn. LLC*, 2022 WL 2828849, at *4 (D. Del. July 20, 2022).

*Third*, appeal would not advance termination of the sale process since, as the Venezuela Parties concede, at least three creditors' claims will be unaffected by any ruling on the Rule 69 issue.  Mot. at 5-6.  And Crystallex's claim would also likely be unaffected by appeal because its attachment has been perfected.  *See* 17 Misc. 151, Aug. 23, 2018 docket entry (confirming execution of writ).  The Venezuela Parties provide no support for their speculation that those parties' judgments "could be satisfied by selling a *minority* stake in PDVH."  Mot. at 6.  Even if they were right, the Venezuela Parties provide no reason to think sale of a minority stake would require redesign of the sale process.  Because the sale will proceed regardless, immediate appeal

"'would only promote piecemeal determination'" and "'create unnecessary delay.'" *Essar Steel*, 607 B.R. at 418 (interlocutory appeal would not "'advance the overall progress" of the action where "'additional claims'" were "unaffected by the appeal").

### B.    The Delay and Disruption of an Interlocutory Appeal Would Outweigh Any Efficiencies

Even assuming reversal on the Rule 69 issue would "overturn[ ]" the sale process, such a reversal would not result in the "efficiencies" the Venezuela Parties predict.  Mot. at 5-6.  Given the advanced stage of the sale process and the likely duration of any appeal, interlocutory appeal would only complicate the process and risk an inequitable situation of stalling some, but not all, of the creditors' claims and causing them to miss sale process deadlines.

*First*, interlocutory appeal would further delay this already protracted litigation and sale process, which is the culmination of more than six years of litigation.  Moreover, the sale process is well underway – the Preparation Launch Date occurred in July, the Launch Date occurred in October, and the Additional Judgment Deadline has passed.  No. 17 Misc. 151 D.I. 643 at 11.  The Tentative Sale Hearing Date is July 15, 2024 – less than nine months away.

The Venezuela Parties hope the Third Circuit will act "promptly," pointing out that oral argument in the *OIEG II* interlocutory appeal was held just a month after the appeal was docketed.  Mot. at 7-8 & n.4.  But the Third Circuit took three months to issue its opinion.  And even if the Third Circuit were to "promptly" rule in the Venezuela Parties' favor, more litigation to resolve Delaware law issues will be necessary on remand.  *See* p. 11, *supra*.

The Venezuela Parties' insistence that an appeal will not "disrupt[ ] or delay[ ] the sale process," Mot. at 2, rings hollow.  The Venezuela Parties do not represent that they will not seek

a stay in the Third Circuit.  Given their previous attempts to derail and delay the sale process at every turn, *see, e.g.*, No. 17 Misc. 151, D.I. 544 at 7, a stay request would not be surprising.[6]

Even if no stay was ordered, an interlocutory appeal would multiply the burdens on the parties by forcing them to litigate an expedited appeal.  Given the Venezuela Parties' position that **fourteen** creditors' attachments depend on the outcome of an appeal, Mot. at 2, other creditors would almost certainly intervene to defend their interests.

*Second*, The Venezuela Parties' purported concerns about "uncertainty" undermining the bid process, Mot. at 6-7, cut the other way.  If anything is likely to "cast a pall of uncertainty over the sale process," *id.* at 6, it is the Venezuela Parties' refusal to accept this Court's rulings and propensity for advancing flimsy arguments to delay a final sales order.  Permitting an interlocutory appeal of indefinite duration expressly designed to halt the sale process would only supplement the Venezuela Parties' attempt to disrupt these proceedings.  In any event, any "uncertainty" resulting from the prospect of appeal exists regardless of the outcome of this motion.  The Venezuela Parties will raise this and other issues whenever final judgment is entered, and nothing in their Motion suggests that interlocutory appeal would be in lieu of an appeal against the final sale order.  The Court's well-reasoned November 1 order will not cause additional "uncertainty," but interlocutory appeal would.[7]

*Third*, interlocutory appeal would consign the Seven Creditors to a different position from similarly situated creditors and expose them, but not others, to the risk of missing sale process deadlines.  That inequitable outcome should be avoided.  The Court should deny the Motion and allow all remaining issues to be reviewed following a final sales order.

---

[6] If the Court considers granting the certification request, it should consider conditioning certification on a commitment from the Venezuela Parties not to seek a stay of the sale process.

## IV.   THE VENEZUELA PARTIES HAVE NOT SHOWN EXCEPTIONAL CIRCUMSTANCES

Finally, the Venezuela Parties have not shown the kind of "'exceptional circumstances'" that would "'justify a departure from the basic policy of postponing review until after the entry of final judgment.'" *Essar Steel*, 607 B.R. at 414-15.  Nor have they established "an urgency that sets this case apart from the typical case" requiring immediate appellate review.  *Matter of Magic Rests., Inc.*, 202 B.R. 24, 26 (D. Del. 1996)

The Venezuela Parties cite the size of the sale process and its international implications. Mot. at 18-19.  But, as noted above, the sale process will proceed in any event to satisfy the claims of the direct PDVSA creditors.  *See* pp. 11-12, *supra*.

The Venezuela Parties should not be permitted to invoke "international comity" and "sovereign" status as evidence of exceptional circumstances.  Mot. at 18-19.  They stipulated that they are not immune under the FSIA and that their cross-motion to dismiss on that basis should be denied.  Order at 5.  Moreover, OFAC, which is best placed to consider international-relations issues, has specifically licensed the Court to proceed with the sale process.  *See* Order at 3 n.5. That approval and the advanced stage of the sale process give the Court's Order a very different posture from the *Crystallex* motion-to-dismiss ruling this Court certified for interlocutory review in 2016.  *See* Mot. at 19.

## <u>CONCLUSION</u>

This Court should deny the Venezuela Parties' motion for certification of an interlocutory appeal.

---

[7] As far as the Seven Creditors are aware, the Special Master has not expressed concern that "uncertainty" over the November 1 order will chill bidding or negatively impact the sale process.

Dated:    December 1, 2023

Respectfully submitted,

Steven F. Molo (admitted *pro hac vice*)
Justin M. Ellis (admitted *pro hac vice*)
Lauren F. Dayton (admitted *pro hac vice*)
Mark W. Kelley (admitted *pro hac vice*)
MoloLamken LLP
430 Park Avenue, 6th Floor
New York, NY  10022
Tel.: (212) 607-8170
Fax: (212) 607-8161
smolo@mololamken.com

*/s/ Jennifer L. Cree*
Rebecca L. Butcher (#3816)
Jennifer L. Cree (#5919)
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE  19801
Tel.: (302) 467-4400
butcher@lrclaw.com
cree@lrclaw.com

Lois S. Ahn (admitted *pro hac vice*)*
MoloLamken LLP
600 New Hampshire Avenue, NW, Suite 500
Washington, DC  20037
Tel.: (202) 556-2000
Fax: (202) 556-2001
*admitted only in New York; practice limited to matters
before federal courts and federal agencies

*Counsel for the Contrarian Parties*

Alexander A. Yanos (admitted *pro hac vice*)
ALSTON & BIRD, LLP
90 Park Avenue, 15th Floor
New York, NY 10016
Tel.: (212) 210-9400
alex.yanos@alston.com

*/s/ Peter J. Keane*
Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, Suite 1700
P.O. Box 8705
Wilmington, DE 19899
Tel.: (302) 652-4100
ljones@pszjlaw.com
pkeane@pszjlaw.com

Robert Poole (admitted *pro hac vice*)
ALSTON & BIRD, LLP
1201 W. Peachtree St. NE, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-4547
robert.poole@alston.com

*Counsel for Saint-Gobain Performance Plastics Europe*

Miguel López Forastier (admitted *pro hac vice*)
Mark Herman (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, D.C. 20001
Tel.: (202) 662-5185
mlopezforastier@cov.com
mherman@cov.com

*/s/ Sarah E. Delia*
Andrew S. Dupre (#4621)
Sarah E. Delia (#5833)
MCCARTER & ENGLISH LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Tel.: (302) 984-6300
adupre@mccarter.com
sdelia@mccarter.com

*Counsel for Tidewater Investment SRL & Tidewater Caribe S.A.*

Miguel López Forastier (admitted *pro hac vice*)
José E. Arvelo (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, D.C. 20001
Tel.: (202) 662-5185
mlopezforastier@cov.com
jarvelo@cov.com

*/s/ Sarah E. Delia*
Andrew S. Dupre (#4621)
Sarah E. Delia (#5833)
MCCARTER & ENGLISH LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Tel.: (302) 984-6300
adupre@mccarter.com
sdelia@mccarter.com

*Counsel for Valores Mundiales, S.L. and Consorcio Andino, S.L.*

*/s/ Sarah T. Andrade*
Stephen B. Brauerman (#4952)
Sarah T. Andrade (#6157)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware 19801
Tel.: (302) 655-5000
sbrauerman@bayardlaw.com
sandrade@bayardlaw.com

*Counsel for Pharo Gaia Fund, Ltd., Pharo Macro Fund, Ltd., and Pharo Trading Fund, Ltd.*

Mark W. Friedman (*pro hac vice* pending)
William H. Taft V (*pro hac vice* pending)
Sarah Lee (*pro hac vice* pending)
Juan Fandiño (*pro hac vice* pending)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York, 11001
Tel.: (212) 909 6000
mwfriedman@debevoise.com
whtaft@debevoise.com
slee1@debevoise.com
jfandino@debevoise.com

*/s/ Theodore A. Kittila*
Theodore A. Kittila (Bar No. 3963)
HALLORAN FARKAS + KITTILA LLP
5801 Kennett Pike, Suite C/D
Wilmington, Delaware 19807
Tel.: (302) 257 2025
tk@hfk.law

*Counsel for Gramercy Distressed Opportunity Fund LLC*

David T. McTaggart, Esq.
Anthony J. Costantini, Esq.
Stephanie Lamerce, Esq.
DUANE MORRIS LLP
1540 Broadway
New York, NY  10036-4086
Telephone: (212) 692-1006
Facsimile: (212) 202-4486
DTMcTaggart@duanemorris.com
AJCostantini@duanemorris.com
SLamerce@duanemorris.com
(to be admitted *pro hac vice*)

Rudolph J. DiMassa, Jr., Esq.
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA  19103
Tel.: (215) 979-1506
Fax: (215) 689-2138
DiMassa@duanemorris.com
(to be admitted *pro hac vice*)

*/s/ Mackenzie M. Wrobel*
Christopher M. Winter (DE 4163)
James C. Carignan (DE 4230)
Mackenzie M. Wrobel (No. 6088)
Tracey E. Timlin (No. 6469)
1201 N. Market Street, No. 501
Wilmington, DE 19801
Tel.: (302) 657-4900
cmwinter@duanemorris.com
jccarignan@duanemorris.com
mmwrobel@duanemorris.com
ttimlin@duanemorris.com

*Counsel to Rudi Lovati and Alessandro Lucibello Piani*